# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RUSH INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION** |
| ) | **AND RECOMMENDATION** |
| v. ) | |
| ) | 1:08CV810 |
| MWP CONTRACTORS, LLC ) | |
| and BRANN'S TRANSPORT ) | |
| SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on separate motions for partial summary judgment by Defendants MWP Contractors, LLC (docket no. 19) and Brann's Transport Service, Inc. (docket no. 17). The parties have responded in opposition to the motions, and the matter is ripe for disposition. Because the parties have not consented to the jurisdiction of the magistrate judge, the motions must be dealt with by way of recommendation. For the following reasons, it will be recommended that the court grant both motions for partial summary judgment.

**BACKGROUND**

Plaintiff Rush Industries, Inc. is a North Carolina corporation with its principal place of business in Guilford County, North Carolina. Defendant MWP Contractors, LLC is a North Carolina corporation with its principal place of business in Roxboro,

North Carolina. Brann's Transport Service, Inc. is a North Carolina corporation with its principal place of business in Roxboro, North Carolina. Plaintiff originally filed this action in Guilford County Superior Court, and Defendants subsequently removed the action to this court based on 28 U.S.C. § 1331 federal question jurisdiction, as the claims arise under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 et seq.

In the complaint, Plaintiff alleges that Defendant shipper MWP Contractors, LLC ("MWP") breached a written agreement with Plaintiff in which MWP agreed to disassemble, package, transport, and reassemble an industrial saw from South Boston, Virginia to Americus, Georgia. The complaint also includes negligence and bailment claims against Defendant MWP. Defendant carrier Brann's Transport Services, Inc. ("Brann's) was hired by MWP to transport the saw to Americus, Georgia. Plaintiff has also brought claims against Brann's for breach of contract, negligence, and bailment.

Both MWP and Brann's filed answers denying liability and asserting cross claims against each other in the event either was held liable. Furthermore, Defendant MWP has counterclaimed against Plaintiff for unjust enrichment based on failure to pay and for breach of oral contract. Both Defendants have now filed a motion for partial judgment on the issue of whether Plaintiff is entitled to recover consequential damages, including lost profits. In addition, MWP seeks dismissal of Plaintiff's state law tort claims for negligence and bailment.

**UNDISPUTED FACTS**

The following facts are undisputed unless otherwise noted. Plaintiff Rush Industries, Inc. manufactures and distributes furniture and wood component parts. In late 2006, Plaintiff purchased a large piece of industrial machinery known as a panel saw ("the saw") for use in its business. Plaintiff purchased the saw through an online auction for $14,300. The saw was located in South Boston, Virginia. On December 7, 2006, Plaintiff entered into a written agreement with MWP, in which MWP agreed to disassemble the saw, transport it to Americus, Georgia, and then reassemble it. The cost of the disassembly, transport, and reassembly was $8,300. Beyond that, MWP agreed, on a "time and material basis," to assist in the start-up of the machine. Under the agreement, Defendant MWP was also responsible for delivering various items with the saw, including, but not limited to, the original set of start-up discs, parts to the electrical system, dust collection system and piping, electrical wiring computer communication cables, tooling, and saw blades.

MWP subsequently contacted Defendant Brann's and hired Brann's to transport the saw from South Boston to Americus. Pursuant to a Straight Bill of Lading, Plaintiff was identified as consignee, MWP was identified as shipper, and Brann's was identified as carrier. During transit to Georgia, several cable connectors were damaged, and the saw was rendered inoperable. MWP eventually located replacement connectors and tendered them to Plaintiff. Plaintiff claims that it lost more than $1 million in profits during the time it took for MWP to locate replacement

connectors.  It is undisputed that the saw was fully operational before it was disassembled, transported, and reassembled by Defendants.

After Plaintiff discovered that the saw was damaged, Plaintiff made repeated efforts to contact MWP to, among other things, obtain MWP's assistance in repairing the saw.  Plaintiff contends that although MWP agreed to "take care" of the repairs of Plaintiff's saw, MWP withheld vital and important information from Plaintiff that likely would have permitted Plaintiff to have the saw repaired in a timely and economical manner.  MWP denies this allegation.  During its communications with MWP while MWP was attempting to repair the saw, Plaintiff reminded MWP that it would lose significant business if MWP did not repair the saw promptly.

**DISCUSSION**

Motion for Partial Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997).  The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  There is no issue for trial unless

there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

The dispute in this case is governed by the Carmack Amendment to the Interstate Commerce Act. The Carmack Amendment was designed "to create a national uniform policy regarding the liability of carriers under a bill of lading for goods lost or damaged in shipment." *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 706 (4th Cir. 1993); *Parramore v. Tru-Pak Moving Sys., Inc.*, 286 F. Supp. 2d 643, 648 (M.D.N.C. 2003). Under the Carmack Amendment, damages are available for "the actual loss or injury to the property" that is transported. *See* 49 U.S.C. § 14706(a). This language has been construed as adopting the common law principle of damages. Generally, the appropriate measure of damages is the difference in the value between the goods as delivered and the value of the goods if they had not been damaged. *Zarn, Inc. v. S. Ry.*, 50 N.C. App. 372, 376, 274 S.E.2d 251, 255

(1981). Other recoverable damages may include consequential damages such as lost profits. *See Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys.*, 325 F.3d 924, 931 (7th Cir. 2003). It is well established, however, that any recoverable damages are "limited to those within the contemplation of the defendant at the time the contract was made." *Zarn*, 50 N.C. App. at 376, 274 S.E.2d at 255; *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854) (damages recoverable in breach of contract action are only those damages reasonably foreseeable by the defendant at the time of entering into the contract). Thus, a carrier of goods will only be liable for lost profits if the "plaintiff shows that the contract . . . itself imposes such liability or that actual notice" of the possibility of such lost profits is conveyed to the carrier. *Zarn*, 50 N.C. App. at 375-76, 274 S.E.2d at 255; *Avtex Fibers, Inc. v. Daily Express, Inc.*, 562 F. Supp. 124, 126-27 (W.D. Va. 1983) (observing that the defendant carrier would only be liable for lost profits if it had actual notice of the profits at issue or if the contract pursuant to which it transported the goods imposed such liability).

Here, the written agreement between Plaintiff and Defendant MWP makes no mention whatsoever of consequential damages such as lost profits, or of MWP's liability for any such losses. I further find that there is no genuine issue of material fact as to whether MWP or Brann's, at the time the contract was entered, had actual notice of the profits Plaintiff stood to lose if the saw was not delivered and fully operational by a certain date. That is, at no point before the December 7, 2006, contract did Plaintiff inform either Defendant that it stood to lose more than $1 million

in profits.  Plaintiff points out that it informed Defendant MWP after the saw was damaged that the saw needed to be replaced quickly so that Plaintiff would not lose valuable jobs.[1]  This does not change the fact that when the parties contracted, Defendants were not put on notice that Plaintiff could potentially lose $1 million in profits if the saw was not operational by a certain date.  Furthermore, the mere fact that Defendants knew that they were moving an industrial saw that was used in business operations does not mean that it was reasonably foreseeable that Plaintiff could lose more than $1 million in profits if Defendants failed to deliver the saw on time and in working order.  *Accord Avtex Fibers*, 562 F. Supp. at 127.  Thus, the court should grant partial summary judgment to Defendants on the issue of whether Plaintiff is entitled to recover lost profits.

Defendant MWP's Motion for Partial Summary Judgment as to Plaintiff's Claims for Negligence and Bailment

Next, Defendant MWP contends that Defendants are entitled to summary judgment on Plaintiff's state law tort claims for negligence and bailment.  For the following reasons, I agree.  Under North Carolina law, "claims arising out of a commercial relationship, which are, at bottom, essentially claims for breach of contract, do not generally give rise to tort liability."  *Int'l Designer Transitions, Inc.*

---

[1] According to Plaintiff's own evidence, several weeks after the saw was transported to Georgia, Plaintiff informed MWP for the first time that Plaintiff would lose a job if the saw were not in operation soon.

*v. Faus Group, Inc.*, 663 F. Supp. 2d 432, 439 (M.D.N.C. 2009); *see also Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345-47 (4th Cir. 1998). Here, Plaintiff has alleged as its First Claim for Relief that MWP breached its contract with Plaintiff to disassemble, package, transport, unload, reassemble, and start up the panel saw. Plaintiff then proceeds to assert three tort claims against Defendants–two negligence claims and a bailment claim. These claims do not involve "independent" or "distinct" allegations aside from the breach of contract allegations; rather, they allege nothing more than that MWP tortiously failed to perform under its contract with Rush.[2] Defendants are therefore entitled to judgment as a matter of law on Rush's tort claims for negligence and bailment.

There is yet another reason why the negligence and bailment claims should be dismissed. The Fourth Circuit has joined other circuits in concluding that the Carmack Amendment "preempts a shipper's state and common law claims of breach of contract and negligence for goods lost or damaged by a carrier during interstate shipment under a valid bill of lading." *Shao*, 986 F.2d at 705; *see also Rahim v. Truck Air of the Carolinas, Inc.*, 123 N.C. App. 609, 613, 473 S.E.2d 688, 690 (1996) (holding that the Carmack Amendment provides "the exclusive remedy for claims

---

[2] Specifically as to the negligence claim, Plaintiff contends that MWP was negligent in repeatedly advising Rush that it would "take care" of the situation but failed to follow through and hid information from Plaintiff that could have allowed Plaintiff to have the saw repaired in a more timely manner. Plaintiff contends that this conduct serves as an independent basis for Plaintiff's negligence claim against MWP. I do not agree, as these allegations merely arise out of Defendants' purported failure to perform as required under the contract by reassembling the saw so that it was operational.

against carriers subject to the Interstate Commerce Commission"). Thus, Plaintiff's state law claims of negligence and bailment are preempted by the Carmack Amendment. In sum, for the reasons stated here, the court should dismiss Plaintiff's state law tort claims for negligence and bailment.

**CONCLUSION**

For the reasons stated above, **IT IS RECOMMENDED** that the court **GRANT** Defendants' motions for partial summary judgment (docket nos. 17 and 19).

_____
WALLACE W. DIXON
United States Magistrate Judge

September 13, 2010